### BOSS v. STATE.

#### No. 19493.

Court of Criminal Appeals of Texas.

April 6, 1938.

Rehearing Denied May 25, 1938.

Sidney Benbow and Andrew Buckner, both of Houston, F. L. Henderson, of Bryan, Earl I. Horowitz, of Houston, and E. B. Coopwood, of Lockhart, for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

CHRISTIAN, Judge.

The offense is murder; the punishment, death.

This is the second appeal, the former judgment of conviction having been reversed by this court because of an error in the charge. See Boss v. State, 131 Tex.Cr.R. 574, 101 S.W.2d 253. The first trial was held in DeWitt county on a change of venue from Harris county. The present appeal is from Caldwell county where the case was tried on a change of venue from DeWitt county.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed R. W. Albert by striking and beating him with a piece of iron and by cutting and stabbing him with a knife.

The testimony of the state that, on the 21st of March, 1936, appellant killed and robbed deceased was uncontroverted. Appellant defended on the ground that he was insane, and on that issue witnesses testified pro and con.

The state introduced appellant's confession in evidence, which, omitting the formal parts, reads as follows:

"My name is Vince Boss. I am 20 years of age. I reside at ———. On last Friday, March 20, 1936, I tried to borrow $3 from Harry Poole. He was in his office at the Happy Hour Theatre. He said he didn't have it. I had about $7 at that time. I went on down to Pete's Restaurant on Congress and later on Gussie Miller and Gladys Sinclair came down there. They got in a cab and went home and I caught a cab and went right behind them. I just flagged a cab. I think it was a 2121; it had a white streak on it. I flagged the cab in front of Pete's. I followed them to 1901 Rusk avenue. That was 2 o'clock Saturday morning. Gladys Sinclair, Gussie Miller and Mrs. Ted Miller and myself, the four of us

stayed in the room there that night. I got up the next morning and started for Bryan. I intended to catch the driver of the Craft truck in Bryan but I didn't get there, so I stopped at Hempstead and he came on through. I got on the truck with him and came toward Houston. We left Hempstead around 5 o'clock. We made all the stops on the way where he delivered goods. I had ridden with him twice from Bryan and once from Hempstead on each Saturday before the Saturday the 21st of March. I went up to Hempstead with the intention of going on to Bryan to get my suit. I intended to catch the Craft driver at Bryan, but I didn't make it to Bryan and stopped at Hempstead. On the way back when we had passed Fairbanks a couple of blocks, he got out of the car to answer a call of nature, and the side door was open. While he was pulling up his trousers he dropped a quarter, and he looked for it, and when he stooped down, I knocked hell out of him with a piece of iron. The piece of iron was in the truck since last Saturday. He carried the iron in the truck for a weapon. When I struck him with the piece of iron, he just squatted. I hit him several times and put him in the truck and hit him the rest. I hit him after he was in the truck. I locked him up and then started the truck off. I put him in the side door of the truck. After I had started to driving away with the truck where I had first knocked him in the head with the iron, I thought I smelled something burning. He was in there crying 'Let me out.' I hit him with the same piece of iron. It had not fell off the fender. When he fell back I cut his neck twice. I then shut the door and drove on into Houston and turned off on Shepherd Drive and stopped the truck by the side of the road and left the truck there with the man in it. When I cut his throat I then took his money. I took the money out of the leather folder and threw the folder away. I was driving when I threw the folder away. I didn't count the money until I came to town. After coming to town, I went to the Southern Hat Company on Travis street and bought a hat and shirt and changed them there. The reason that I changed was because my shirt and hat had blood on it. I tried to get it off but I couldn't. The money the officers got from me at the Ben Milam Hotel was the money I took from the man I hit. I have read the above and foregoing statement and it is true and correct."

Appellant excepted to the definition of the term "voluntarily" as follows: "The defendant objects and excepts to the first paragraph of said charge, and especially to that portion wherein the court defines the term 'voluntary' for the reason that the definition as given is confusing, and is calculated to mislead the jury." We quote the charge: "The term 'voluntarily' means done by design or intention; purposed; intended." We see nothing in the exception sufficient to apprise the trial court that it was appellant's position that said charge should have been qualified to the extent of advising the jury that a person of unsound mind would not have the ability to form a design or intent. The exception being insufficient, it is unnecessary to determine whether such an instruction would have been proper. Article 658, C.C.P., as amended by Acts 1931, c. 43, § 5, Vernon's Ann.C.C.P. art. 658, requires that each ground of objection to the charge be distinctly specified. An objection is insufficient when it fails to point out in what particular an instruction is erroneous. Clinton v. State, 132 Tex.Cr.R. 303, 104 S.W.2d 39. In any event, the court submitted an adequate instruction on the law of insanity, and pertinently told the jury to acquit appellant if he was insane. See Williams v. State, 117 Tex.Cr.R. 459, 34 S.W.2d 886.

Appellant excepted to the instructions on murder and murder without malice on the ground that the defense of insanity was not "referred to and made a part thereof." In other words, it is appellant's contention that said charges eliminated from the consideration of the jury the subsequent instructions on insanity. It has already been observed that an adequate instruction on the law of insanity was submitted to the jury. The court gave in charge the approved definitions of malice and murder without malice. In applying the law of murder to the facts, the jury were required to believe that appellant was actuated by malice. The law of murder without malice was also given sufficient application. The charge must be viewed in its entirety, and when thus considered it is obvious that appellant's contention that the defense of insanity was eliminated from the consideration of

the jury cannot be sustained. See Brookins v. State, 71 Tex.Cr.R. 101, 158 S.W. 521. We quote that part of the charge submitting murder with malice, as follows:

"Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant Vince Boss, on or about the 21st day of March, A.. D. 1936, did unlawfully, voluntarily, and with malice aforethought kill R. W. Albert by any of the means charged in the indictment, then you will find the defendant guilty of murder with malice aforethought, and assess his punishment at death, or confinement in the penitentiary for life, or for any number of years not less than two, unless you find him not guilty under subsequent instructions in the charge."

The qualifying clause, "unless you find the defendant not guilty under subsequent instructions of the court in this charge," also appears in the instruction submitting murder without malice.

We pretermit detailed discussion of the exceptions to the charge on insanity. The issue was adequately submitted in a form consistently approved in the decisions of this court.

Our examination of the record leads us to the conclusion that appellant was accorded a fair trial.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

GRAVES, Judge.

The burden of appellant's contention in this motion seems to be that he was injured in the trial hereof by the excessive kindness and caution on the part of the trial court in that the court reiterated his defense of insanity many times throughout his charge to the jury.

The main defense offered by appellant was that he had been a habitual user of the drug marijuana, and was a person of unsound mind at the time this offense was committed. There was much testimony offered on both sides of this controversial matter, and the learned and cautious trial judge gave a comprehensive charge on every issue that could have been raised by the facts in the case.

Appellant's main contention seems to be that the trial court was too liberal in his charge, especially in calling the attention of the jury to practically the only defense offered for this killing, and that was the offered defense of insanity.

We see no reasonable grounds for such a complaint. This defense was offered and made an issue by testimony on both sides thereof, and presented to the jury for its solution, and the trial judge in his caution gave a full and fair charge thereon. If he gave appellant a more liberal charge than is usually given, we see no reason why a complaint should be made thereof by the one who might have been benefited by such liberality.

That appellant was the person directly responsible for a brutal killing of his companion, in order to obtain money, is abundantly proven; that he was sane at such time was also proven to the satisfaction of the jury; that he has had a fair trial also seems plain to us, and after a further careful reading of the record we find no error therein.

The motion for a rehearing will be overruled.